May it please the Court. Freedom of religion. It's a religion, it's a right that I enjoy as a citizen of the United States. It's a right that you enjoy. It's a right that these people in front of the Court enjoy. And it's a right that we know that we enjoy because our forefathers took it upon themselves to fight a war and to begin a big experiment in democracy to establish a government that would guarantee that right to us. Why don't you move to the legal issues in the case? Yes, sir. The legal issues, Your Honor, basically surround the district court's decision. And just for a point of clarification, the Court is aware that this is a consolidated appeal. The initial appeal was brought on behalf of the individual trustees. When the motion to dismiss based on qualified immunity was not granted, we were, the plaintiffs appealed that. We then filed a motion for summary judgment that was granted. The lower court's motion for summary judgment we're asking the Court to uphold. That motion for summary judgment established the fact that the practice of the Birdville Independent School District inviting students to present messages of their own choosing at the beginning of board meetings did not run afoul of the Establishment Clause of the United States, even though those presentations often included prayer by those students. I know this Court has previously addressed the issue of prayer at school board meetings. I intend to address those cases specifically. But why isn't this a pretty easy case after Town of Greece? It is a very easy case after Town of Greece, Your Honor. I think after Town of Greece, this case is very clear. I think Town of Greece, if we look back to Marsh, which was the predecessor to Town of Greece, Marsh said clearly that the, that the, that legislatures and other deliberative bodies were entitled to open their meetings with prayer, with legislative prayer. When Town of Greece came along, they said that, that, that principle applied not only to legislatures, but in that particular instance to city councils. And we think that that makes it very clear, Your Honor. One of the cases that I mentioned that the Fifth Circuit's had the opportunity to examine this is the Doe versus Tangipahoa case. And at that, at that time, that decision was a split decision. But Justice Clement correctly recognized and, and very wisely foresaw the result in Town of Greece, because she said, these are deliberative bodies. If you look at the functions, and those functions are set out in the brief, but if you look at the functions that they perform, there are many functions that are incidental or that are integral to the operation of a school district. A school district hires and fires people. It buys and sells real estate. It selects vendors. It approves purchases. It does, it sets tax rates. It passes bonds. These are governmental functions. And so, it's exactly the type of body that the legislature would have contemplated would be a deliberative body. The forefathers would not have at all been surprised to see a board of trustees engaging in exactly this type of, of legislative prayer. What do you do with the Third and Sixth Circuits, which seem to have gone the other way? The Third and Sixth Circuits, those two cases, Coles and Indian River, predated Town of Greece. And so, I think that they're wrong in that instance. One of the things, of course, I mentioned the Tangipahoa was a split decision. One of the things that was relied upon by the court, the problem was that the prayer there was sectarian. And he thought that the fact that the sectarian prayer was present precluded Marsh from applying. Justice Clement appropriately recognized that that was not the case. And a number of justices that have looked at this situation in light of Town of Greece have obviously concluded that sectarian prayer is permissible in situations like this. That, and, and the court is aware that in this particular instance, the practice, I haven't gone through the historical part of the practice, but the practice is to randomly select students. Students are entitled under their board policy, FNA local and FNA legal, to sign up for these opportunities to speak. I also have a quick factual question and then a legal one. My understanding is that these students are primarily or maybe entirely elementary and middle school, whatever it's called in this district. Is that correct? That is not correct, Your Honor. It's all the schools in the district. Are there substantial numbers? Is that broken down? I know there was a chart of how many, the nature of the various presentations that were made and how many were prayers and whatever. Is there also a breakdown of how many elementary, middle, high school students? I believe that information is within the briefing, within the record, Your Honor, as to the number of elementary schools. There are far more elementary schools, fewer middle schools, and then fewer still high schools. But it's done on a rotational basis. And so it is the case that there are fewer high school participants just because there are fewer high schools to be chosen from. Let me ask a legal, maybe it's not a legal question, but in the, your friend, opponent's brief, on the second appeal, it said that you have conceded, not you personally, but that the board has conceded that these prayers are primarily for the benefit of students. Is that the case? No. I mean, since in the legislative prayers it's for the benefit of those who are going to be making decisions and to put them in the right frame of mind and leave behind some of the rancor that otherwise might be there, successful or otherwise, do you recall that in their brief? And what is it? I couldn't find it in the pages. Have you ever made a statement about for whose benefit these prayers are given? No. In fact, I have made the very strong point that they're primarily for the benefit of the governing trustees themselves. I do not acknowledge by any stretch of the imagination that they're for students because there are very few students there. In some instances, the only student there may be the student who is delivering the prayer, if they chose to do that. Now, keep in mind that— Do you think it matters? Do you think if the record were developed more and we found there were more students on a more regular basis at these meetings, would that affect the analysis? Well, of course, the town of Brees recognizes that there could be situations that it's—there is the instance that you would look at whether or not a record supported, for instance, if prayers became proselytizing if they crossed the line. But in this particular case, Your Honor, it's very clear. Mr. Smith, who is the only representative of the American Humanist Association who claims to have attended any meetings, specifically identifies two meetings that he attended. Those meetings are both after he has graduated from Birdville High School, both of those after he is an adult. At one of those meetings, a young student presented this prayer, and if I may read to the court, please bow your heads in prayer. Heavenly Father, thank you for the blessings that we have received. Please guide our school board in making the best decisions that will benefit the students, parents, and staff of the school district. Help them to stay focused on their goals, to keep our schools on a forward positive avenue. One could hardly imagine a more prototypical legislative prayer than that one. That is exactly the nature of legislative prayer, to ask for guidance for those leaders who are making decisions on behalf of—it's that whole concept that derives from Mars, that derives from Town of Greece. The process of solemnizing the opening of the—and the Court is aware that these are given at the opening. They are given in conjunction with the Pledge of Allegiance. It's the Pledge of Allegiance. And at the time—initially, the Court recognizes there were Pledges of Allegiance and Invocations. Now, I think the Court is also aware that subsequently, the American Humanist Association raised concerns about the use of the term invocations, because they believed that that term itself suggested to students that they necessarily needed to give a prayer. No trustee had ever communicated with anyone to suggest that that was the case. It was not the process for anyone to tell the kids what they were supposed to say. But what would a non-religious invocation be? Give me an example. I mean, invocation means that you are calling on someone. Invocation—so the invoking of the meeting, the beginning of the meeting, can be solemnized in a number of ways. And in fact, if you look at a number of the institutions who have filed amicus briefs in this particular situation, and if you go to their websites, you will discover that they're actually non-secular invocations that they have developed. But it has been left to the students as to what they say that should be appropriate to the opening of the meeting. And so— As I understood it from the briefs, these don't even have to be in the nature of a prayer being. They could just be a statement from the student. Is that right? Or do I misunderstand? No, you—that is correct. It can be a statement. The student wanted to stand up and talk about how beautiful the earth is and to inspire the school board members to maintain beauty in the world or something like that. Would that be permissible? The board policy F&A— As a long—as a non-religious statement? Would that fit in with the program? That would be acceptable, Your Honor. Yes. The permissible topics that are set out in board policy F&A local say that for this event, it should be related to the purpose of the event and the purpose of marking the opening of the event, honoring the occasion, the participants, and those in attendance, bringing the audience to order, and focusing the audience on the purpose of the event. And then there are restrictions that it not be obscene, that it not be vulgar, it not be offensively lewd or indecent. And those are the restrictions that apply. So, yes, Your Honor, your example is perfectly appropriate. If the student calls upon the trustees to help improve the earth, that's a completely appropriate remark for the opening of the meeting. Well, Counselor, would— Were any of those kind of statements given before the March 15th? Yes. Yes. Prior to the revision of the practice in March of 2015, some of the invocations were prayers, but there were also personal readings, there were poems, personal anecdotes. So there were other presentations. And even though the speech was entitled Invocation, no one was surprised. It was just, again, just opening remarks by a student. And those opening remarks reflected the viewpoint of the student. Now— Well, Counselor, let me ask you, the one thing fairly significant—not significant, that's particularly from legislative prayer, but also from the town of Greece—is legislative prayer chaplains are generally given those, and that's the historical practice and part of what the Court relied on. Town of Greece, you're dealing with adults. Here you have students doing it. Is there—do you have any case that tells me or on which I should rely that the fact a student is given this prayer doesn't somehow put this in a different category, take it out of the legislative prayer? It is different, at least in that extent. I will point the Court back to the Doe v. Tangapahoa case, because in Doe v. Tangapahoa, the decision that, of course, was vacated, it was the practice that they had a variety of speakers. Some of the speakers—but if you go back and look at Doe v. Tangapahoa, student speakers specifically were included, and that did not cause anyone any concern on that. Those are three of the best judges I could ask for, but insofar as controlling precedent, it's not that strong of a precedent in light of its history. Sure, sure. So does the spring—I mean, certainly the Supreme Court school cases, talking about it at convocations, at football games or whatever, much different result in those cases. And I'm just worried we're getting closer to those analytically by having a student always there being the one making the presentation, and it's a harder fit for legislative prayer. What do you tell me about that? Actually, I would reassure you that, to the contrary, it's a better situation, because it is very easy to imagine that if a person shows up in attendance at a meeting and the or a clergy person who is hired by them or brought in by them will have—I would say would give more of an imprimatur of endorsement of religion. But in this instance, you're talking about the speech of children. And so, again, the claim of Mr. Smith in December of 2014 is that he as an adult hears this speech by a student, and I would say, if anything, if the court were not to look under this, under the rubric of Town of Greece and Marsh, if they looked at it under the rubric of Lee v. Weissman and the coercion test, that that very much indicates it almost shoots that argument in the face, because you're talking about a young child who presumably has no reason to give the imprimatur of government about it before I forget. And that is to say that, further, if you looked at that same coercion test under Lee v. Weissman, I think that the circumstances of this case completely make clear that Mr. Smith was not suffering the effects of coercion, because rather than the traditional things that are described, that he was afraid that he might have been treated differently, that he might have been—received less favorable treatment because of—and somehow was forced to bow his head, what does he do? He videotapes—he stands in the boardroom and videotapes the young man giving the particular invocation. And so I think that the—if you were to look at that under coercion, I don't think you could—that the court could conclude that coercion applied, but it is essential to recognize that this is the speech of the school board. I think the school boards—our brief makes clear, and cites to a law review article, that there is a long, long history in Texas and in other states of opening school board meetings with legislative type of prayer. We think that the decision in light of town of Greece, of town of—the Tangipahoa case would be quite different today. Let me give you a hypothetical. It's a hypothetical because, as far as I know, it has nothing to do with this record. But suppose that the school district had a requirement that each high school civics class once a year was required as a requirement of the course to attend a school board meeting, just to understand how the legislative process works and how the school is governed. So the students were required to be there or they would be different? Required attendance could have an impact on it, Your Honor. I have to concede that it could, because if you look at the cases like the Doe versus Duncanville, if you look at cases like Santa Fe, mandatory attendance by students is a thing that plays a part. What I will suggest in this instance is that the conduct of these meetings is, again, largely for adults. All attendees, whether they be there to receive an award or be there to do a presentation, are free other than their actual presentation to come and leave as they see fit. And our briefing makes clear that attendees do that with regularity. It's quite frequent that people come in after the meeting has already begun. They leave in the middle of it. They'll go out and they'll take telephone calls. One of the things that frequently happens is people come for just their portion of the meeting. And so it could be different, I will concede, Your Honor, that it could be different if it were mandatory attendance and it was a mandatory audience of students that were there. The cases that the American humanists point out to you of Doe and, I mean, Coles and Indian River, you actually in one instance had a student member who served on the school board and was always there, always part of that. You also had a situation where students came in and made reports to the board of things that they were doing. But in this particular situation, we're not talking about a student council meeting. We're not talking about bodies of students or, you know, groups of students who are there. We're talking about meetings of adults for very governmental, bureaucratic types of reasons. And with this open ability to move in and out, there's no such thing as forced attendance. You talked about the ability. Again, I'm not sure how completely to develop the record of the ability, the fact it's not mandatory, the ability to move back and forth. It seems to me that you could have a culture, you could have an expectation that if you're a student there to get the award, don't disrupt the meeting, be there before it starts or try to be there before it starts. That would be equally, it seems to be an issue even if it's not absolutely mandatory. Is there any development of the record sufficient where we can be sure that the students who are there for such things aren't, in fact, generally there at the very beginning and do not leave? I think it's undisputed, Your Honor, based upon the record that we have, that the students are free to leave at any time that they choose to, that any of the participants in the meeting, any of the attendees... I'm thinking about the practice, though. I mean, you're talking about it's not mandatory. I'm getting to sort of the culture, the expectation. Was that developed? Are the students generally there? Do we know if they're generally there to hear these prayers? I don't, and of course, we didn't have any students who were complaining. But I don't know that there is a record. The meeting always begins with the Pledge of Allegiance, followed by the student expression. And so there's no suggestion as to the number of students based upon the record that might have been there during that time. If the student's expression is just discussing the beauty of the earth or something like suggested by Judge Smith, how could that qualify as legislative prayer if it's not a prayer? And so this is an opportunity for legislative prayer, but it's also an opportunity... So originally, the concept was invocation. Again, a message appropriate to the opening. And so when there is a prayer, it falls under that legislative prayer exception. But based upon the concerns expressed by the American Humanist Association, we wanted to make sure that it was the student's speech. And so the students... And the record demonstrates that it's more than I'll be able to address, but the students are responsible for... Solely responsible for the content of their speech. They present it, and if it happens to be that they choose a poem instead of a legislative prayer, then that's just what they present. And so some of the poems that you saw, for instance, could even potentially be religious in nature. One of the students read a poem that said, Thank God for Teachers. We think that as a matter of student expression, that if they don't engage in legislative prayer, it's very clear that these students have a right to speak on topics of religious beliefs. And if they want to say, even though it's not in the form of a prayer, I am thankful to God for my ability to attend school in a country where free speech is valued, they have that right to say so. All right. You've set time for rebuttal, Mr. Wood. Mr. Shaw. Thank you. May it please the Court. Prerak Shaw of the Texas Attorney General's Office on behalf of the 15th State and Meeky Coalition. With the Court's permission, I want to focus my time on addressing the school district's current policy, and basically the questions that Your Honor was actually finishing up with Mr. Wood about. So the parties have focused a lot of their attention on whether the current policy falls within the safe harbor of Town of Greece, but our submission is that's actually not the right fight. At least it's not the fight this Court needs to have first. The Town of Greece case concerns government speech. However, a deliberative body like the school board can choose to open their meetings with a prayer, even if that prayer is something they're directing someone else to give. But the student expressions under the current policy aren't government speech at all. They are given by randomly selected students, and the specific message delivered, frankly the student, by the student. It may be a prayer, it may not be a prayer, as we learned earlier today. Accordingly, these student expressions are the private speech of the student, or at most school-sponsored speech. But whether it's private or school-sponsored speech, the important thing is the expressions are not government speech. And therefore, there is no Town of Greece analysis at all, because there is no establishment clause problem. Now, government speech is traditionally the government's own speech. It exists, as the Supreme Court said, when the government is the speaker, or when it enlists private entities to convey its own message. So in Town of Greece, you had a legislative body that enlisted a speaker to give a specific message, namely a prayer. The Birdsville School Board no longer does that. What they do is they open up essentially a limited public forum, and they invite a message of their choice. By doing so — JUSTICE KENNEDY. Do we say how that makes a difference? I mean, it seems to me this is very — what you're talking about runs at least into some problems with the Santa Fe Independent School District dealing with school football games. I mean, you still have an official function going on in the football game. They are invited. They can choose their own topics. I mean, that was government speech. MR. RAUMENBURG. Well, Your Honor — JUSTICE KENNEDY. How do you distinguish that? MR. RAUMENBURG. What the court did in Santa Fe was actually deal with a very unique and extreme set of circumstances. What the court essentially said was, despite all this, you know, superficial level of student choice and stuff, what was going on in that case was essentially a sham. The school district had created a system by which their message could come across, due to a very unique set of circumstances. For example, in the Santa Fe case, what happened was a student election, a two-part student election. First, the entire student body voted as to whether a statement should be given at all. And second, the entire student body chose one person to represent them in giving that speech. What the court said is that this combination of facts, A, one student for the entire year, B, the fact that it was a majoritarian election, essentially took this out of the private or school-sponsored speech realm and turned it into government speech. Just to go — not to go too deep into the facts of that case, but it really was a very unique scenario. For example, the school board passed a policy right before that — during that court's litigation that said, we're going to have this election process. Within that policy, they included a provision that said, these policies, this speech cannot be proselytizing or sectarian. However, that was only triggered if a court enjoined their more broader policy. They clearly intended to have prayers, sectarian and proselytizing prayers given, and created this carve-out only if a court enjoined that provision. Given those unique facts, the court found, look, this is really government speech. This is not like that. This is more similar to the other cases that I cited in my brief. For example, a talent show, a graduations prayer where valedictorian is chosen through means outside of the school's selection process, where they're giving a message — a speech of their own choice. And this comes to light specifically because, as Birdville just said, they can give a speech on any topic. The school is not directing what they say. In that world, what the student is speaking cannot be government speech. And declaring a government speech might actually violate their First Amendment rights. They have a right to give a speech of their choice and not have the government claim it to be their own. If there are no questions on that, I actually want to address one hypothetical that Judge Smith asked on the issue of whether a civics class, if they were, you know, once a year forced to attend a school board meeting. That is not the fact of this case, so I understand why the school district made the same move they did. But as a broader matter, I don't think that would cause any problems either. I believe town agrees actually, at least in the briefing, the court will have addressed this. It is very, very common for students to attend meetings of legislatures and stuff like that. The important thing to realize in this case is we are not talking about a school organization. We are not talking about a meeting of teachers. We are not talking about an assembly. We are talking about elected officials of a deliberative body that are coming together to make decisions that affect the public. Their jurisdiction might attend to, excuse me, my time has expired, just 10 more seconds. You can have 10 seconds. Their jurisdiction might only extend to schools, but they are a deliberative body. The fact that students choose to attend by their own school does not change that fact, and that is what town agrees is about. Thank you, Mr. Shaw. Ms. Miller? May it please the court. I'd like you to imagine for a moment that you are an elementary student who's been selected not to deliver the invocation, but the Pledge of Allegiance at these school board meetings. You are told to meet your principal 15 minutes before the meeting to go over the procedure. You then follow your principal into the meeting and sit in the reserved seat. The gavel is pounded and your principal walks up to the podium. You and another student follow behind her. She announces to the audience that you are there to represent your school and that you serve as a campus leader. She then asks the entire audience to rise, the principal does. Immediately after you deliver the pledges, while everyone is still standing, the other student, the invocation giver or the student expression giver, takes the microphone and begins to deliver a prayer that is against your beliefs, as the other student that's there. You want to leave, but you look around and everyone's standing and participating, including the principal, a few teachers, there's 16 students in the audience that represent the Haltom Singers who are going to perform later for the board, there's six high school student ambassadors in the audience, and then the entire board is participating. Also, do you have standing to make that argument? It's one thing to say that Mr. Smith would attend these occasionally. What you're talking about is somebody who's forced to attend because he's doing one function and it's too awkward to leave, sort of the culture of the situation. Is that argument properly before you? Yes, Your Honor, for several reasons. First of all, the coercion analysis is never focused on the actual litigants of the case. For instance, in the Santa Fe case, the Supreme Court, when it found that the invocations at football games would ultimately be coercive under Lee, it said that they were problematic because at a future football game, it was possible that attendees that were there would be coercive to participating in prayer. It never focused on the actual litigants. Second, the coercion test under Lee has never been limited to students. In fact, it's been extended to prisoners. In many prisoner cases, it's been extended to students, university students, at a military college in the Mellon v. Bunting case. The First Circuit recently applied the coercion test to a police employee who was coerced into participating in a prayer at a police academy. Counsel, it seems to me, regardless of the specifics of exactly how to read what you're talking about, a very narrow example of the one person there, perhaps, in the student category who might be less able to leave than others. It seems to me that that's, if you want to get down to that micro level, you might need somebody present to make that argument, but we shall see. Yeah, well, what I wanted to get to is it's not just the student that's giving the Pledge of Allegiance. And keep in mind that elementary students deliver the pledges about 8 out of 12 meetings that a student, an elementary student, is basically compelled to stand at a podium while a prayer is being delivered. There's no evidence, for instance, that any student has left this dynamic. But there's also many other students that are at these meetings that their participation is tantamount to compulsory. There are six student ambassadors. It's a student ambassador program that started in 2014, where two students from each of the campuses. You also have, every December, students with Haltom Singers or Richland Rebel Lairs or one of the school choral groups come perform for the board, and they're often in uniform under the supervision of a faculty member. The handbooks for those student groups or those choir groups say that those are curricular classes they meet during sixth period, and that attendance is mandatory for all performances. So every December, when a school board has a band member or a band or a choral group come and perform, those are effectively mandatory and certainly more mandatory than a student merely attending a voluntary high school football game. So there's not just this myopic elementary school situation. It's a students are present at every single meeting. They're participating in every single meeting. Well, Counsel, it seems to me your argument really is getting, as we are required to do under Town of Greece, to look at the very specific facts of the case. It seems to me at most what you may be doing is saying that the policy there needs to be changed. If there are students who are being required to be there, getting back to Judge Smith's hypothetical, that could alter things. If there are a cappella choirs, madrigal singers, students who are there, that may alter whether you can give the prayer. But generally, that wouldn't alter whether at a school board meeting in which there's not mandatory student attendance at the time of the prayer, that the prayer would still fit under Town of Greece. What do you say to that? I disagree, because it's not just the students being present and participating at every single meeting, but it's also the role and nature of a school board and its entire purpose being for students, as well as the principles underlying the Supreme Court's prayer cases. I mean, not only do you have students at all these meetings. Let me make sure what you're saying. Even if there's no student who is there, it's what's, under your argument you're making right now, there still could not be an invocation? If students were not present at all, I mean, first of all, you can't stop students from being at meetings, one, because of the Open Meetings Law, but also because students have to go to the board for disciplinary action. Well, Open Meetings Law would be voluntary. So if it's a voluntary attendance, you're saying? Well, for instance, if you had a disciplinary action against you and you had to go to the board. That's not the Open Meetings Act, though. I'm sorry. Yeah, but the board has a rule that says that for certain disciplinary actions, students have to come before the board for... Just address the situation where there's no student there who has to be there. If no student has to be there, I would argue that it's certainly closer to a Town of Grace situation. But you still have a situation where the board should not be mandating or should not be participating in something that they wouldn't be able to mandate in the classrooms. But yeah, we can see that if students were never present at these things, we'd be talking about a different practice. The problem... I could say school. Is that what makes it the equivalent of a classroom? It does seem to me that if you're just talking about a school board meeting, you're much closer to a city council than you are to a school room. Well, it's the fact that it's on school campus. It's conducted by school officials. Administrators and teachers are often present at these meetings. So it's not just some elected board members, but you have faculty and the superintendent actively involved in these meetings. When you start throwing the students into the mix, for a student with the, you know, BISD is written across the podium, you know, it looks to them like any other school event. And we're not asking if this is more similar to a classroom, but is it more like, for instance, a football game where adult, outside adult community members are regularly present? Well, but a football game isn't a deliberative body, is it? It's not, Your Honor. But the difference, what we should look at is the focus on what the student's perceiving and because the focus on the Supreme Court's prayer cases is on protecting students from subtle coercive pressures. And here you do have those issues present. I mean, what I would ask the Court to consider is would a student say, the student at the podium or the student in the Haltom Singers, do they have any more freedom to absent themselves from a prayer than a mature adult or a mature high school student attending a completely voluntary football game? If not, then the circumstances to that student, whether they are feeling the pressure to remain and participate in the prayer with all that it implies or protest by leaving and thereby risk appropriate from their peers and their school administrators, if the students are put in the same position, then there's really no basis for saying that a student at a Birdville board meeting is entitled to less protections than a student attending a public voluntary football game. But there's no requirement that the students give a prayer or an invocation. And there's no requirement that a student attend a football game either. And, in fact, there's no real requirement that a student attend their graduation. But the Supreme Court in both of those cases recognized the difficult decision it is for a student to have to choose between attending a school event and ostracizing themselves just to avoid a religious practice. The school has created an opportunity for students here to come before the board and deliver a pledge and an invocation. It's no answer to that student that wants to deliver the pledge, for instance, that you're going to have to be willing to subject yourself to a prayer because of the school program. That's a possibility. And I think that's the main distinction between this. But there's another distinction, too, between a town hall and a school board meeting. And that is that the board has inherently authoritarian position over the students and the authority to discipline them. And that's not a fact that's present in a legislature or a town, compounding those coercive pressures for students to conform and participate in the prayer. Also is the fact that the school officials, the principal, the superintendent, and the board are all actively participating in prayer with students. The legislative prayer exception has never extended to allow principals or teachers to participate in prayer with students when they are acting in their official capacity. Yet at these board meetings, somehow now under the district court's ruling, they are immunized by this shield of legislative prayer exception to say, well, once we walk into this room for this meeting, we can all stand here and pray alongside our students. But when we're out at the basketball court, we can't do that under Duncan College. Let's talk about the revision. It seems to me the school board's damned if it does, damned if it doesn't. They've made this revision, I presume, to avoid litigation. So if the revision as is would have been in effect before, if that would have been the original policy, would you argue that it was unconstitutional? With respect to the student expression? Yeah. I believe so, because the effect right now is still that students are able to deliver prayers at formal school board meetings where other students are present. Prayers or invocations or poems or statements about the earth. Exactly. And even if we had a situation where, say, there was only three prayers delivered out of the entire year, so three meetings had prayers, for the students attending those meetings, let's just say it was a December where you had all of the singers in the audience, you had the six high school ambassadors, for all of those students, it's no consolation to them that another meeting didn't have a prayer. They are still put in that uncomfortable position of having to say, do I participate or do I leave? Do I risk, you know, everyone knowing that I don't like this prayer? Putting the students in that position is what makes the prayers unconstitutionally coercive. The fact that they're also school endorsed is a separate inquiry, but the fact that students are put in this position actually makes them unconstitutional, even if we were to assume, arguendo, that a limited public forum were created. Are you still taking the position that these individual defendant officials are personally liable under Section 1983 and don't enjoy qualified immunity? Our position is that, yes, that they are entitled to qualified immunity because the law has been very well settled that school officials cannot invite students to deliver invocations. How can you possibly say that in light of the town of Greece? Doesn't that at least lend enough uncertainty to the question? You may ultimately think that you'll prevail, but that's what qualified immunity is for, and you know how specific the Supreme Court has required existing law to be, clearly established law. So in light of all that, it seems to me that your argument against qualified immunity is absolutely frivolous. What was clearly established as a matter of law as to these facts for a school board meeting to say that these officials are liable? A few things. One is that the circuit courts were, the Sixth and the Third had already the analysis at all. It was limited to town boards. Justice Kennedy went out of his way to distinguish students and to make clear that the legislative exception is limited to mature adults who actually are free to come and go as they please for any number of reasons in and out of meetings without having their absence be noted. But students in these board meetings are not free to come and go as they please. In fact, students generally don't have that same maturity and that same lack of fear of peer pressure to remain that adults do. And the entire opinion distinguishes adults from students. So I don't think there's anything about Town of Grace that makes this practice more acceptable. And the Court in Chief— You don't agree that the school board is a deliberative body? We submit that they are, but we also submit, just like in the Third and Sixth Circuits, that that doesn't, that's not dispositive. Not only is it not dispositive, but it really, it's what happens actually in the meetings rather than just the label. So you're saying that these school board members should have looked to the Third and the Sixth Circuits to decide what was clearly established? As well— Even in light of Town of Grace? Well, in light of Town of Grace, it's a very recent decision, but I think Town of Grace, like I said, very carefully distinguishes adults from students. So I think if they had looked at Town of Grace and changed their practice to, say, a pre-meeting prayer, like what happened after Doe v. Tangipahoa was remanded, the school board ended up adopting a new policy where they delivered a prayer before the gavel began, before any students were present, and it was an entirely internal practice for the board. Don't you realize how unfair that is to, I mean, if you look at the reasons for the doctrine of qualified immunity, you have these local citizens who serve on a school board. They may make a small salary, but it's certainly not a full-time job by any means. It's an insignificant amount of money if they get paid anything to come to these meetings. And they try to make an honest decision, balancing decisions, and they have Town of Grace that comes along, that intervenes after other circuits, but not this one, have decided. How is that possibly fair to say that they should have to personally pay damages if ultimately we decide, well, this is more like a high school game than it is Town of Grace? How is that fair? I have two answers. One is that they actually, the revisions they made moved it further away from Town of Grace, whereas before they had an invocation and it was intended to solemnize. Now they're saying that a student can say basically whatever we want. We have in the record that they're even allowed to call the board jerks. They can disparage the board. So they actually took this practice and took it further away from Town of Grace. So I don't think that Town of Grace, again, gives them that immunity. But this whole case is really about injunctive relief and about making sure that the practices don't continue. As far as the damages go, I mean, the amount that we're looking for really is a symbolic nominal damage type of remedy just to make clear that this is not an acceptable practice. And the problem that we saw here is that the board for many, many years was inviting students to deliver invocations only. And the case law is very clear. There's never been an exception carved out for school board meetings to allow students to be subjected to this practice or students to give the invocations. And so what they were doing was completely outside the bounds of any law. There was no case that went to the contrary. Even in Tangibahoa, this Court limited its analysis to four prayers. None of those were student prayers. One was a prayer delivered by a school board son, but it wasn't even clear on the record that that was a student prayer. So this Court never touched on that. Even under Tangibahoa, this Court said, at least under the majority ruling, that sectarian prayers weren't allowed. Yet even following that decision, sectarian prayers continued to be delivered at these school board meetings. So this board didn't even revise its policy post-Tangibahoa when there was a distinction made between sectarian and nonsectarian. Sotomayor, you've said that you're asking for nominal damages. Is that in your pleadings that you're asking for nominal damages? I believe it is, yes. Have you waived attorneys' fees? Waived them? Yes. No, Your Honor. So you'd expect attorneys' fees from these school board members, as well as nominal damages. Is that right? Whether the attorneys' fees come from the school board or the school officials, I think it is less. School officials are students in their individual capacities, are they not? That's correct, Your Honor. So attorneys' fees could be quite hefty, could they not? They could be, yes, Your Honor. Are you being paid attorneys' fees? Me personally, no. I mean, I work for the non-profit organization, so all of the money that comes to us just goes back to the organization. So no? Personally, no. But you've pled for attorneys' fees? Yes, we did. And under 1988, non-profit and legal centers are entitled to attorneys' fees just as attorneys are, but just the profits don't actually come to me, but to the organization. Out of the pockets of the individual school board members, as a matter of law? I believe, I'm not sure, for instance, if the court, you know, I don't know what their insurance policy is or if the board would be liable for all the fees versus the school district, but again, I think that's really for the trial court to decide the amount based on how, you know, how much damage is or how much, you know, the school board was actually liable in this. But I think, again, the point is just to ensure that this practice doesn't continue. So if ultimately the court decides that they are not, that they are entitled to qualified non-immunity, I think the focus is still mostly on injunctive relief and whether this practice violates the principles of Lee and Santa Fe because it requires students to make a difficult decision to participate in a prayer with all that it implies for protest. And that's exactly the problem here. Not only are school officials actively participating, but that situation where you have a principal or superintendent participating in a prayer with students independently violates the Establishment Clause under Duncanville as well as Mergens and Karen V. v. Treen. Those are well-settled authorities and no court has ever carved out an exception for legislative prayer for school officials to participate. And since the district court completely ignored this issue or at the very least didn't provide the court a sufficient analysis to explain why he was extending the legislative prayer exception to allow principals or a superintendent to participate in prayer with students, at the very least, we ask that the court remand that issue for a further determination or for this court to use as de novo review to resolve that separate issue because I think that that was a factor that wasn't present in Tangipahoa and, in fact, that is present here. There's other distinctions between the present case and Tangipahoa that I would like to point out. First, there was no evidence in that case that the Board deliberately made its meetings meaningful to students, nor was there any evidence of other student participation like the bans that come in or the May meetings where you have students being delivered awards. There's no evidence in that case. So even if that case was a closer one, this is not that. The second is, again, there was no faculty participation. There was no participation with principals and students participating in prayer in that case. And the third distinction is that this practice, unlike Tangipahoa, is really not an internal act. In Tangipahoa, the practice was a lot more like a legislative prayer practice. It was called legislative prayer. The Board defended its practice solely under legislative prayer. But in this case, the Board has limited the pool of applicants or the pool of participants to student council, student leadership, and has said that it is an opportunity for students to hone their public speaking skills and exercise their free speech rights. That's not an internal act to solemnize meetings. That is a public act for students to engage in. And again, that was very different than Tangipahoa. And lastly, in this case, the Board actually opens its closed session meetings with a prayer and then reopens the meeting about an hour or two later with now this public prayer. That fact wasn't present in Tangipahoa. There was one prayer, one solemnizing part of the meeting. But here, the Court should ask why the Board insists on having solemnizing its meetings once behind closed doors, which we're not challenging that prayer. We're challenging the prayer that's the second public prayer, where students are being compelled to at least stand by it and be subjected to it, deliver it. And so that's another key distinction. I'd also like to point out that unlike a town board meeting, where the Board possesses an inherently authoritarian position over students, it also carries all the earmarks of any other school event. A student that's at a school board meeting would not be able to decipher that a school board member is any different than a principal or superintendent. They don't know that they're a deliberative body or not. Town of Greece rests on the assumption that adults are understanding of the legislative prayer history exception and why there was a confluence between Congress and the first Congress and having prayer. But a student can't be presumed to have that knowledge. A 10-year-old student that's delivering a prayer before the Board doesn't understand the nature and the purpose of this historical practice. Nor can that student really be, you know, presumed to be able to come and go as they please. But I think it's important to mention that that student would have no means of knowing, you know, the basis for the exception to begin with. I'd also quickly like to address the free speech arguments. If this Court recognizes that students are put in the position of having to choose between participating in a prayer, with all that it implies, or protesting and thereby risk appropriating from their peers and faculty, just like in Lee and Santa Fe, then even if the Court assumes arguendo that a limited public forum has been created. JUSTICE KENNEDY Excuse me. I can't listen quite as fast as you're speaking right now. Could you slow down just a bit? Yes, Your Honor, yes. JUSTICE KENNEDY No, we don't have much time left. I think you speeded it up just a bit. Yes, so my point is that when a prayer is coercive, when students are part of a captive audience and they're subjected to a prayer, this Court's precedence in Metzler, as well as Hall and other school cases involving prayers delivered over intercom systems in the morning, recognize that even if those messages are of the student's own unrestricted choosing and they're part of a public forum or a limited public forum, they're still coercive as to students that are subjected to them and therefore unconstitutional even if a so-called limited public forum has been created. Here, unlike in Santa Fe, the prayers are even more endorsed because in Santa Fe, and they're more coercive too, but in Santa Fe there was no indication of faculty and school officials actively participating in the prayers. The student wouldn't have a special reserved seat in the front row. There wasn't going to be any part of an agenda that the prayers were put on. The idea that the prayers in Santa Fe were endorsed because of the majoritarian election is not actually supported by the case or this Court's case. In fact, this Court made a point to say that even if prayers were not delivered by vote but spontaneously initiated at a school-sponsored meeting, they would be unconstitutional or school-sponsored event where school officials are present and have the authority to stop the prayer from being delivered because at a school-controlled event where the student is using the school sound system and subjecting the audience to a prayer, an audience that's assembled because the government invited them, that prayer is stamped with a school seal of approval. And in this case, that's even more so because of the fact that the student gets a certificate from the board, poses for a picture with the board, has a principal announcing them, saying that they're representing the school. All of these things are putting the school stamp of approval on those prayers, facts that were not even present in Santa Fe, where they would be completely the student's own choosing with no certificate or extra stamp of approval. So to say that these are private speech really flies in the face of Santa Fe. If I may briefly conclude. Affirming the District Court's judgment will yield two paradoxical outcomes. The first is that under the District Court's ruling, a young elementary student can be standing up at the podium delivering the pledges. But if that same prayer were delivered at an informal, completely voluntary football game where adults are present and where community members are present, that prayer would be unconstitutionally coercive. You said proselytizing and degrading? Yes, Your Honor. Nothing in the school board policy prohibits proselytizing or degrading? No, Your Honor. Nothing in the current policy prohibits that. He recited the entire policy, too, Your Honor, and there was nothing in the language that suggested that proselytizing or degrading would be disallowed. The second paradoxical outcome is that under Mergens, Ingebretson, Carenby, and Duncanville, a performing arts teacher could not participate in a prayer with her students or her team before a recital or before a team event. But yet that same teacher can participate in a prayer with her students at a more formal school-sponsored meeting just because it's a board meeting, and so too could the principal and superintendent. But that's completely at odds with precedent. In fact, the Supreme Court's cases have never turned on any particular adult-to-student ratio. The heightened protection that's accorded to students does not depend on that ratio at all, in fact, but in fact it depends on the presence of students and the fact that they, even if it's just five students, if those students are impermissibly coerced, then the You mentioned Doe versus Duncanville. That was the basketball game? That's correct. Well, it's not really very accurate to cite that case. That was a case in which either coaches or students were referring to one of the girls on the team as that little atheist. That's a completely different situation. I don't know how you can draw any kind of support from that case. I believe that was one fact in the case, but the case turned on the fact that the coach was participating in the prayer. So when you look to the analysis and what was found unconstitutional, it was the school official participating in the prayers. But Mergens also supports that, as well as Karen B., where this Court struck down a practice of allowing teachers to lead and participate in prayers with students during school time. So I'm out of time, but thank you, and I will be back on rebuttal. All right. Thank you, Ms. Miller. All right. And you saved time for rebuttal, Ms. Miller. Yes. Okay, Mr. Wood. The plaintiffs below would like to turn this case into a case about classroom, like Engle v. Vitale. They would like to turn it into a basketball game, like Doe v. Duncanville. But the case is very clearly about a governmental deliberative body like Marsh in the town of Greece. Ms. Miller mentioned in her sort of, well, it wasn't really hypothetical, but her description of the facts that this would permit a student to be forced to be present for statements that were proselytizing and degrading, and I had asked her the question, is there anything in the policy to keep that from happening? I thought there was to be no overt proselytizing. And, Your Honor, I didn't put the whole policy in during my argument, but the town of Greece recognized that what was recognized to be a legitimate constitutional practice could fall by the wayside if, in fact, that occurred. But there is no indication in the record that that has occurred. In fact, the sole prayer that is clearly within the record is the one that I read to you. That's the one that Mr. Smith witnessed himself. There's no question. If anything, that is just pure legislative prayer. No proselytizing. I would argue nonsectarian as well. It makes reference only to a heavenly father. But the town of Greece takes care of the sectarian, nonsectarian distinction. It does take care of sectarian, nonsectarian. And so this is not a situation where we are talking about students. Again, it's a meeting of adult bodies. Plaintiffs want to talk about the fact about the location, the ownership of the microphone. That's going to be true in a city council meeting. It's going to be true in the legislature as well. It's government property. It's the facilities utilized by the — so there's no — that's no basis for distinction here. The — one of the things that I do think is interesting is the issue of their participation. And so the Court clearly recognizes that if this — if a student elects to give — and sometimes — and again, in some instances, students will elect not to. But if a student does elect to engage in legislative prayer, the board members get to participate. It would be very strange — you all have seen the painting of the first Congress when they bring in their hired clergymen, and some of them have almost prostrated themselves on the ground. They're on their hands and knees. I think it would seem very unusual to them to say it is permissible for members of a legislative body to have a legislative prayer, and that somehow we would judge the trustees of the Birdville Independent School District apparently by the elevation of their chin. Because if their head happens to bow below perpendicular, that they are participating because they bowed their heads. And the Court has looked at this in some other situations, as it's cited in our brief. But that's the kind of actions that I don't think that the Court needs to parse out, is if a trustee bows their head. In the town of Greece, it's very clear from the facts there that the trustees not only bowed their heads, but many of them made the sign of the cross and said amen. That's just part of the legislative prayer. I think the Court has already recognized the fact that qualified immunity — obviously, there were splits in opinion in Coal and Indian River. Obviously, there was a split of opinion on town of Greece, but it is far from clear. The trustees, I will add, Your Honor, you said that they might receive some compensation. The trustees that govern the public school districts of Texas serve without compensation. So you're asking people who devote significant periods of their time to come out of pocket because apparently they did not read town of Greece the same way as Ms. Miller did. And I think that, if anything, the standard to lose your qualified immunity is that no reasonable trustee could have reached the conclusion that this was constitutional. I think, based upon a reading of town of Greece, that not only could a trustee, but obviously the lower federal court in this instance, reach that conclusion. And so I think it's important that the Court recognize that that qualified immunity continues to apply. Two things. As far as the — back to the question about participation by — or mandatory attendance. There's mandatory attendance for students to go to the legislature. You see legislative classes — I mean, you see civics classes who are required to go to the legislature, witness what goes on there, to other types of city council meetings, perhaps. That was present in town of Greece. There were clearly — the lower court clearly recognized that there were Boy Scout groups, high school groups, other groups who were present. And so we say the fact that it is this context of legislative prayer in front of a governmental body makes that a constitutional practice. All right. Thank you. It's not a classroom. Thank you all very much. Appreciate it. Miller, you save time for rebuttal. Okay. I have just two things. One with respect to the participation. Students attending school board meetings are different than students going on a field trip, say, to go see a town meeting. When they're doing that, they're not participants. They're just outside observers. And the prayer is not being directed at them, nor are they the main component of the practice like here. Second is the participation issue with respect to school officials participating. In Edwards and Mergens, the Supreme Court recognized that because of students' emulation of school officials as role models, it's impermissibly coercive for those teachers and those school officials to participate in prayer with students. And those are dynamics that aren't present at town councils or in a Congress setting because you don't have teachers or administrators. You have lawmakers. And students can not tell the difference between their superintendent sitting in a school board meeting, participating in a prayer with them, from sitting at a basketball game or a football game, participating in a prayer with them. To the student, it's probably the same thing. The second is that if the court finds that students are not free to come and go as they please at these meetings, for instance, the student at the podium or the team that's being presented an award, then the prayers are unconstitutionally coercive under Greece. The Greece court said that prayers will contravene the Establishment Clause if somehow they're coercive. It's a coercion level that's higher than Lee because the whole exception is premised on the idea that mature adults are being subject to the practice. But even as to adults, Justice Kennedy, Alito, and Roberts, in their opinion, stress that a practice would be coercive if it's shown that constituents cannot arrive late for the prayer or cannot be free to come and go as they please without their absence being noticed. And that's exactly what we have here, not with respect to adult constituents, but even the younger student constituents who deserve the heightened protections under the Establishment Clause. So the dynamic here would even fail if the court were to apply Greece or Marsh in those instances. I want to go back to the idea that not only are these students, but these are mostly elementary students. Even in Morgan v. Swanson and other Supreme Court cases, this court, as well as other cases, have recognized that elementary students, because they are so impressionable and susceptible to religious indoctrination, they deserve the most protections under the Establishment Clause. In Peck v. Upshur, a Fourth Circuit case, the Fourth Circuit even said that in a case involving true free speech, not an issue here, but true free speech, it would be impermissible in an elementary setting, but not in a high school setting, because elementary students cannot discern subtle nuances between genuine private speech and government-sponsored speech. In this case, that's even more true, because the students, the atmosphere is so coercive, it's much more coercive than in an informal basketball game or an informal public football game where people really can go up and down as they please. Here, the students are surrounded by school officials. The pressures that they would feel to conform are just so much more heightened in this situation because of the formal setting that the students are in. I guess I really don't have anything more to address, so I'll just end there, because I'm running out of time. All right. Thank you, Ms. Miller. Thank you. Your case is under submission.